**UNITED STATES of America,**
**Appellee,**

v.

**William CLAYTON, Defendant,**
**Appellant.**

**Nos. 71–1091, 71–1092.**

United States Court of Appeals,
First Circuit.

Oct. 28, 1971.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant appeals from convictions for the sale of LSD in violation of 21 U.S.C. § 331(q) (2) and conspiracy to import hashish (marijuana) into the United States in violation of 21 U.S.C. § 176a.[1] The two offenses, hereinafter referred to as the sale and the conspiracy, were charged in separate indictments, but the cases were consolidated for trial. Although the indictments also named two codefendants, Fink and Lozoff, the defendant Clayton was tried alone.[2] The prosecution relied heavily on the testimony of three federal undercover narcotics agents;[3] the defense presented no evidence..

With respect to the LSD sale, the evidence established that on January 7, 1970, two agents, posing as underworld figures, met with Clayton, Fink, and Lozoff in a room at the Hotel Sonesta in Boston. The agents had previously discussed narcotics transactions with Fink and Lozoff, but had never before met Clayton. After introductions, Lozoff asked Agent O'Brien if he was ready to purchase LSD. The agent replied in the affirmative, whereupon Clayton stated that the LSD was "beautiful acid" and of very high quality. He then picked up a plastic bag containing over 3,000 LSD tablets and threw it down in front of Agent O'Brien. O'Brien paid $2,000 in cash to Lozoff. Later that day, having discovered the bag was short 700 tablets, the agents returned to the hotel room. Clayton participated in discussions that led to an exchange of marijuana and cash in settlement of the shortage.

———◆———

William J. Mulligan, Milwaukee, Wis., with whom Gary A. Gerlach and Hayes, Peck, Perry & Gerlach, Milwaukee, Wis., were on brief, for appellant.

Paul F. Ware, Jr., Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

1. Since repealed. Act of October 27, 1970, Pub.L.No.91–513, § 1101(a) (2), 84 Stat. 1291.

2. Clayton, Fink, and Lozoff were charged with the LSD sale in one count of a six count indictment and were charged as co-conspirators in the conspiracy indictment. On the day of trial Fink entered a plea of guilty to two counts of the substantive indictment, and the prosecution agreed to dismiss the conspiracy charge against him at the time of disposition on the substantive offenses. Codefendant Lozoff failed to appear for trial.

3. The fourth and final prosecution witness was the chemist who analyzed and identified the LSD and hashish.

The bulk of the evidence adduced at trial related to the conspiracy to smuggle hashish from Morocco. In conversations prior to the January 7 meeting, Lozoff had informed the agents of a contact, namely Clayton, from Morocco who could smuggle out large quantities of hashish. At the January 7 meeting Clayton stated that he lived in Tangier and had "unlimited supplies of hashish that could be smuggled into the United States." He then engaged in extensive discussions of the specifics of the smuggling operation, the quantities of hashish available, and the possible techniques to be employed. After this meeting, the agents had no further personal contact with Clayton, but his activities in Morocco were related to them by Fink. This hearsay evidence was admitted under the rule that the out-of-court statements of one conspirator made in furtherance of the conspiracy are admissible against a co-conspirator. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); 4 Wigmore on Evidence § 1079.

■ In this appeal Clayton, hereinafter defendant, argues that consolidation of the two indictments for trial under Rule 13, Fed.R.Crim.P. was improper, or, alternatively, that he was entitled to severance under Rule 14, Fed.R.Crim.P. The Rule 13 test for consolidation is whether the offenses could have been joined in a single indictment under Rule 8(a), Fed.R.Crim.P.[4] Here, both charges involved trafficking in illicit drugs by the same parties and at least in part at the same time and place. "Connected together" by these factors, we hold that the offenses were properly

joined under Rules 13 and 8(a). United States v. Kellerman, 432 F.2d 371 (10th Cir. 1970); Robinson v. United States, 366 F.2d 575 (10th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 717, 17 L. Ed.2d 547 (1967). In the circumstances of this case, the fact that one crime was inchoate and the other substantive is immaterial. See, e. g., Pegram v. United States, 361 F.2d 820 (8th Cir. 1966); Mendez v. United States, 349 F.2d 650 (9th Cir. 1965), cert. denied, 384 U.S. 1015, 86 S.Ct. 1952, 16 L.Ed.2d 1036 (1966).[5]

■■ Rule 8 sets the limits of tolerance of prejudice resulting from joinder of offenses. King v. United States, 355 F.2d 700 (1st Cir. 1966). Even for cases falling within Rule 8, where special prejudice appears the trial judge may sever under Rule 14, Fed.R.Crim.P. Such severance is within the judge's discretion, and only a strong showing of prejudice will warrant finding an abuse thereof. Gorin v. United States, 313 F. 2d 641, 645 (1st Cir. 1963), cert. denied, 379 U.S. 971, 85 S.Ct. 669, 13 L.Ed.2d 563 (1965). Defendant alleges that the hearsay evidence admitted solely on the conspiracy charge tended to corroborate his involvement in drug trafficking with Fink and Lozoff. Additionally, he claims that evidence of the LSD sale prejudiced his conspiracy defense by tending to show a disposition for criminal activity. Three factors lead us to conclude that these allegations of prejudice are insufficient to warrant a finding of abuse of discretion.

First, although the crimes were similar in nature, the evidence in support of each was distinct and readily referable

---

4. "Rule 8. Joinder of offenses and of defendants

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or con-

stituting parts of a common scheme or plan."

5. In these cases and numerous others where joinder of conspiracy and substantive offenses was challenged, the substantive action was in furtherance of the conspiracy. Although that is not the instant case, this distinction is unimportant in light of the similarity of and factual connection between the offenses charged.

to the offense with respect to which it was introduced. There was little likelihood that the jury would be confused or apply the evidence to the wrong offense. *Cf.* Drew v. United States, 118 U.S. App.D.C. 11, 331 F.2d 85 (1964). In addition, the trial judge explicitly instructed the jury that the evidence of each offense was to be considered independently of evidence pertaining to the other.[6] The ease with which evidence can be properly applied to joined offenses reduces the danger that the evidence will be used corroboratively or cumulatively. Dunaway v. United States, 92 U.S.App. D.C. 299, 205 F.2d 23 (1953).[7]

Second, this is not an instance where a weak evidentiary case and a strong one were joined in the hope that an overlapping consideration of the evidence would lead to convictions on both. The evidence adduced on each charge was more than sufficient for a conviction on each.[8]

Third, in the LSD sale case, where defendant claims the most prejudice, he received a five year sentence to run concurrently with his eight year sentence for conspiracy. The concurrence of this sentence reduces the prejudice of joinder. United States v. Adams, 434 F.2d 756, 760 n. 13 (2d Cir. 1970). In view of these factors, defendant has failed to carry the heavy burden of showing that the district court abused its discretion in refusing to sever under Rule 14.

Defendant's next contention is that the admission of hearsay statements of co-conspirators violated the confrontation clause of the sixth amendment. He does not allege that there was insufficient evidence of a conspiracy agreement, *cf.* United States v. Edwards, 366 F.2d 853 (2d Cir. 1966), cert. denied *sub nom.* Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967), or that the statements were made other than in furtherance of the conspiracy, *cf.* Krulewitch v. United States, *supra.* Rather, his attack is a constitutional broadside against the co-conspirators exception to the hearsay rule as applied in federal courts.[9]

It is firmly established that although the hearsay rule and confrontation clause stem from the same roots, they are not congruent. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970). "[M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." California v. Green, 399 U.S. 149, 156, 90 S.Ct.

---

6. "You have two indictments here, and each charges a separate offense. Each offense and the evidence pertaining to it should be considered separately by the jury, and a separate verdict will be returned as to each of the two offenses. A defendant's guilt or innocence of the crime charged in one indictment should not affect the jury's verdict on the other. That is, a defendant —and the government, too—both parties are entitled to have the jury give separate and distinct consideration to the proof adduced on each of the two charges."

7. *See also* United States v. Lotsch, 102 F. 2d 35 (2d Cir.), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939). We do not, however, subscribe to the statement in *Lotsch* that evidence of a criminal disposition is generally excluded "rather because the issue is practically unmanageable than because it is not rationally relevant." *Id.* 102 F.2d at 36.

8. Defendant contends, in a separate argument, that the evidence was insufficient to support his conviction for the sale of LSD. He was charged as an aider and abettor to the sale, and under 18 U.S.C. § 2(a) was punished as a principal. The evidence recited above indicates that the defendant recommended the LSD and participated in its delivery. He associated himself with the venture and participated in it as something he wished to bring about successfully. These actions amply support a conviction for aiding and abetting. United States v. Priest, 419 F.2d 570, 571 (10th Cir. 1970).

9. The prosecution must establish *prima facie* the conspiracy and identify the conspirators before evidence of acts and declarations of each in furtherance of the conspiracy may be used against the others. *Krulewitch, supra,* 336 U.S. at 453, 69 S.Ct. at 723, 93 L.Ed. 790 (Jackson, J., concurring).

1930, 1934, 26 L.Ed.2d 489 (1970). While defendant argues for no such broad proposition, he does contend that the co-conspirators rule is an unjustified exception to the hearsay rule and consequently violates the sixth amendment.

Defendant cites no appropriate authority for his contention. His reliance on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is misplaced, for *Bruton* was explicitly limited to hearsay "clearly inadmissible against [the defendant] under the traditional rules of evidence." *Id.* at 128 n. 3, 88 S.Ct. at 1623. Indeed, the authority closest in point, Dutton v. Evans, *supra*, appears to mandate a rejection of defendant's claim.

*Dutton* involved a sixth amendment challenge to the co-conspirators rule as applied in Georgia. The Georgia rule is broader than that of the federal courts in that out-of-court statements of co-conspirators need not be made in furtherance of the conspiracy. In *Dutton*, a co-conspirator's hearsay statement made in the concealment phase of the conspiracy was admitted against the defendant.[10] Justice Stewart, announcing the judgment of the Court, held that the admission of hearsay did not violate the sixth amendment.[11] The opinion is strictly limited to the facts of that case, including a finding that the hearsay admitted was in no sense "crucial" or "devastating." While not prepared to make the same statement regarding evidence in the instant case, we note that the Georgia rule itself has fewer safeguards than the federal rule. Referring to this factor, Justice Stewart said:

"It is clear that the [more] limited scope of the hearsay exception in federal conspiracy trials is a product, not of the Sixth Amendment, but of the Court's 'disfavor' of 'attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions.' Grunewald v. United States, 353 U.S. 391, 404 [77 S.Ct. 963, 1 L.Ed.2d 931]." *Dutton, supra*, 400 U.S. at 82, 91 S.Ct. 216.

Moreover, the Court in *Krulewitch, supra*, stated:

"There are many logical and practical reasons that could be advanced against a special evidentiary rule that permits out-of-court statements of one conspirator to be used against another. But however cogent these reasons, it is firmly established that where made in furtherance of the objectives of a going conspiracy, such statements are admissible as exceptions to the hearsay rule." *Id.* 336 U.S. at 443, 69 S.Ct. at 718.

■ While *Dutton* sets out no standards to test the constitutionality of a hearsay exception, the import of that case read against the background of *Krulewitch* is clear. The federal co-conspirators rule, deeply embedded in usage, grounded on the presumed reliability of admissions against interest, and safeguarded by the requirement of a *prima facie* agreement, does not violate the confrontation clause. While the Constitution should not in every instance be read to accommodate existing rules of evidence, neither can we permit every general rule of evidence to be constitutionalized.[12]

■ With respect to the conspiracy conviction, defendant further claims deprivation of his sixth amendment right to be informed of the charges against him. The indictment charged

10. The defendant in *Dutton* was being tried for first-degree murder.

11. Justices White, Blackmun and Chief Justice Burger joined in Justice Stewart's opinion. Justice Blackmun further stated that any error was harmless. Concurring in the result, Justice Harlan found the Georgia rule constitutional under the due process clause, arguing that the sixth amendment was not designed to prevent overly broad exceptions to the hearsay rule. Justice Marshall, with whom Justices Black, Douglas, and Brennan joined, dissented on the grounds that the sixth amendment had been violated.

12. *See* Note, Confrontation and the Hearsay Rule, 75 Yale L.J. 1434 (1966).

the defendant under both 18 U.S.C. § 371 (general conspiracy statute) and 21 U.S.C. § 176a (conspiracy to smuggle marijuana). At the arraignment the clerk of court read only 18 U.S.C. § 371, but in the course of the trial the judge made it clear he considered that the case was being tried under 21 U.S.C. § 176a and sentenced the defendant under that statute. Defendant alleges prejudice on two grounds. First, that awareness of the charge of 21 U.S.C. § 176a, with its higher sentence,[13] might have induced him to plead guilty. This contention is frivolous; defendant was obviously aware from the indictment itself, which was read by the prosecution in its opening statement, that he was being charged under both 21 U.S.C. § 176a and 18 U.S.C. § 371. Second, defendant alleges prejudice from the proof of overt acts.[14] Even if unnecessary, evidence of overt acts was not impermissible. Moreover, the jury instructions required a finding of an overt act, thus requiring *more* than the minimal proof required by Ewing v. United States, *supra* note 14. Under these circumstances we fail to see that defendant was misled or prejudiced.

Finally, defendant argues that the trial judge abused his discretion by failing to impose sentence under the Narcotic Addict Rehabilitation Act of 1966 (NARA), 18 U.S.C. § 4251 et seq.[15] Defendant has not carried the burden of showing that the trial court, presented with evidence that the defendant was an addict, did not consider sentencing him under NARA. The judge examined all the affidavits concerning defendant's drug habits, and the record indicates that he specifically considered the provisions of NARA.[16] *Cf.* United States v. Williams, 407 F.2d 940 (4th Cir. 1969). In addition, initiation of NARA sentencing procedures is within the sound discretion of the trial judge, 18 U.S.C. § 4252. Where the defendant was convicted of offenses involving quantities of narcotics far in excess of any personal needs, we can find no abuse of discretion in not invoking NARA. In view of the evidence in this case, we decline to review further the sentences imposed on the defendant.

Affirmed.

13. This section imposed a mandatory five year minimum sentence for first offenses, while five years is the maximum prison sentence under 18 U.S.C. § 371.

14. According to Ewing v. United States, 386 F.2d 10 (9th Cir. 1967), proof of overt acts is unnecessary for a conviction under 21 U.S.C. § 176a. We express no opinion with respect to that decision.

15. NARA permits special commitment for treatment of certain "eligible" narcotics addicts. If the court believes an "eligible offender" is an "addict," it may commit him for an examination. 18 U.S.C. § 4252. Following the examination, if the court determines that he is an addict and is likely to be rehabilitated through treatment, barring certain exceptional circumstances, the offender is committed for treatment for an indefinite period not to exceed ten years. 18 U.S.C. § 4253.

16. The following colloquy occurred at the disposition hearing:
"Court: * * * 'I may say and should say that I have fully read all of the material with reference to Mr. Clayton that counsel filed with the court yesterday.'
"Mr. Hanley [defense counsel]: 'Yes, your Honor, and I think that that material [affidavits relating to defendant's drug habits], even though it is not considered in the way that the Court has refused to consider it under 4215(2) and (3) [sic], can be considered by the Court and give the Court a further background concerning this defendant.'" (There is no section 4215(2). Presumably counsel meant section 4251(f) (2).)