**UNITED STATES of America, Appellee,**

**v.**

**Pembrick Edward FOUTZ, Jr., Appellant.**

**No. 75–2152.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1976.

Decided Aug. 16, 1976.

Peter D. Ward [court-appointed counsel], Asst. Federal Public Defender, Baltimore, Md. (Charles G. Bernstein, Federal Public Defender, Baltimore, Md., on brief), for appellant.

Steven Kellough, law student (Jervis S. Finney, U. S. Atty., and Robert A. Rohrbaugh, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Pembrick Edward Foutz, Jr. was convicted by a jury of twice robbing the Kensington, Maryland, branch of the Bank of Bethesda, in violation of 18 U.S.C. §§ 2 and 2113(a), (b), (d), and (f). Although the two robberies took place two and one-half months apart, Foutz was tried for both offenses in one proceeding; his motion for relief from prejudicial joinder under Fed.R. Crim.P. 14 was denied by the district court. On appeal, Foutz argues that the district judge abused his discretion by not granting a severance. He claims that prejudice arose from the fact that the same jury heard evidence of both crimes, whereas had he been tried separately for each robbery, evidence of one offense would not have been admissible at the trial for the other. We agree, and reverse and remand for new, separate trials for each robbery.

I.

On December 30, 1974, a lone black male, armed with a handgun, robbed the Bank of Bethesda at Kensington, Maryland. He entered through the front door, vaulted the tellers' counter at teller position number two, and took money from two tellers' drawers. He left through the same door and walked up a side street. The robber wore a turtleneck sweater pulled up over his mouth and a beret-type hat. Two bank employees testified that Foutz appeared similar to the robber. No fingerprints of Foutz were found at the scene, and the photographs taken by the bank surveillance camera were apparently not helpful in identification. The defense presented as an alibi witness a Washington police cadet who testified with considerable certainty and specificity that Foutz was with her in Washington at the time of the robbery.

On March 13, 1975, the same bank was robbed by a group of three black males. They entered by the front door. One robber, allegedly Foutz, stood near the door holding a handgun on the bank employees. He wore a wide-brimmed hat and may have had on a turtleneck sweater. The other two robbers vaulted the tellers' counter near position number two and took money from several tellers' drawers. All three robbers then escaped down the same side street used by the lone gunman in the previous robbery. There they were observed entering an automobile which was shown to be registered to Foutz. Two bank employees testified that Foutz resembled the robber who stood near the door and held the gun. So far as the record reveals, no fingerprints were found, and apparently the surveillance photographs did not depict the robber alleged to be Foutz. The defense presented an alibi witness who was unable to account for Foutz' whereabouts at the time of the robbery.

Foutz was charged with both robberies in one indictment, as permitted by Fed.R. Crim.P. 8(a), since the offenses were of the "same or similar character." He then made a timely motion for a severance under Rule 14, alleging that he would be prejudiced by a joint trial. The motion was denied. The jury returned a verdict of guilty of both robberies. A motion for a new trial on the grounds of prejudicial joinder was denied. Foutz was sentenced to twenty-five years, imprisonment for each offense, the sentences to run concurrently.

II.

Rule 14 provides that a severance may be granted "[i]f it appears that a defendant or

the government is prejudiced by a joinder of offenses . . . ." The granting of a severance under Rule 14 is committed to the discretion of the district court. *United States v. Catena*, 500 F.2d 1319, 1326 (3 Cir.), cert. denied, 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1974); *United States v. Clayton*, 450 F.2d 16, 18 (1 Cir. 1971), cert. denied, 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972); *United States v. Adams*, 434 F.2d 756, 758 (2 Cir. 1970). In this case, we believe it was an abuse of that discretion not to grant a severance.

■ We begin our analysis with Rule 8 which permits joinder under three circumstances: (1) if the offenses "are of the same or similar character"; (2) if they "are based on the same act or transaction"; or (3) if they are based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In the instant case, joinder was initially permissible only because the offenses were of the same or similar character. When two or more offenses are joined for trial solely on this theory, three sources of prejudice are possible which may justify the granting of a severance under Rule 14: (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated;[1] (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other;[2] or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition. As we view the record, we are concerned here with the latter form of prejudice.

■ While to the layman's mind a defendant's criminal disposition is logically relevant to his guilt or innocence of a specific crime, the law regards the inference from general to specific criminality so weak, and the danger of prejudice so great, that it attempts to prevent conviction on account of a defendant's bad character. Thus, evidence of "other crimes" which is relevant only to prove a criminal disposition is universally acknowledged to be inadmissible. Fed.R.Ev. 404(b); *United States v. Woods*, 484 F.2d 127, 133 (4 Cir. 1973), cert. denied, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); *Bradley v. United States*, 140 U.S.App.D.C. 7, 433 F.2d 1113, 1117–18 (1969); McCormick on Evidence § 190 at 447 (Cleary ed. 1972).

■ One inevitable consequence of a joint trial is that the jury will be aware of evidence of one crime while considering the defendant's guilt or innocence of another. If the rationale of the "other crimes" rule is correct, it would seem that some degree of prejudice is necessarily created by permitting the jury to hear evidence of both crimes. *See Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85, 89–90 (1964); 8 Moore's Federal Practice ¶ 8.05[2] at 8–22 and ¶ 14.03 at 14–7 to 14–8; 1 Wright, Federal Practice and Procedure § 143 at 317–18; Note, Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 553, 556–58 (1965).

■ Although the law does not allow consideration of other crimes as evidence of a defendant's criminal disposition, evidence of other crimes is admissible for certain other purposes because its probative value is then thought to outweigh its prejudicial effect. In those instances where evidence of one crime is admissible at a separate trial for another, it follows that a defendant will not suffer any additional prejudice if the two offenses are tried together.[3] *See Unit-*

---

1. *See Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85, 88 (1964); 1 Wright, Federal Practice and Procedure § 222 at 437.

2. *See Cross v. United States*, 118 U.S.App.D.C. 324, 335 F.2d 987, 989–90 (1964); 8 Moore's Federal Practice ¶ 14.03 at 14–11 to 14–14.1.

3. This standard does not require that every item of evidence relating to one offense be admissible in a separate trial for the other, but rather looks in a broader sense to whether the rules relating to "other crimes" evidence have been satisfied. And, at least in the case of non-violent crimes, it is ordinarily the fact of

ed States v. Bragan, 499 F.2d 1376, 1380 (4 Cir. 1974); *United States v. Williamson*, 482 F.2d 508, 511 (5 Cir. 1973); *Bradley v. United States*, 433 F.2d at 1118; *Drew v. United States*, 331 F.2d at 90; 8 Moore's Federal Practice ¶ 14.03 at 14–8.2; 1 Wright, Federal Practice and Procedure § 222 at 439.

█ When offenses are joined under Rule 8 on the ground that they "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan," it is manifest that evidence of one offense would ordinarily be admissible at a separate trial for the other. When offenses are joined because they "are of the same or similar character," however, admissibility at separate trials is not so clear.

█ In this case, the government argues that evidence of one bank robbery would have been admissible at a trial for the other in order to prove the identity of the perpetrator, under the so-called "handiwork" or "signature" exception to the other crimes rule. Under this exception, if the prosecution can produce evidence tending to show that the defendant committed the "other crime," and if that crime was committed in a manner so similar to that of the offense for which the defendant is being tried that it is highly probable that the same person committed both crimes, then evidence of the "other crime" is admissible to prove that the defendant committed the offense with which he is charged. *See United States v. Woods*, 484 F.2d at 133–34; *McCormick*, supra, § 190 at 449. The government's proof, especially that showing the use of Foutz' automobile by the robbers, tended to identify Foutz as one of the perpetrators of the second robbery. Thus, if the two robberies were committed in a sufficiently similar manner, evidence of the second robbery would have been admissible at a separate trial for the first, and untoward prejudice could not inhere in joinder.

We do not think that the two robberies were so similar as to warrant the inference that they were perpetrated by the same individual. The same bank was robbed twice; beyond this, the differences between the crimes are more striking than the similarities, and such similarities as do exist "all fit into an obvious tactical pattern which would suggest itself to almost anyone disposed to commit a depredation of this sort." *Drew v. United States*, 331 F.2d at 93 (robbery of two High's ice cream stores by negroes wearing sunglasses); *see United States v. Carter*, 154 U.S.App.D.C. 238, 475 F.2d 349 (1973) (two robberies by a man wearing a fur coat and a fur hat; held insufficient similarity).

█ The first robbery was committed by a single black male; the second by three such persons. In both instances, access to the bank was through the front door, hardly a remarkable congruity. In the first robbery, the gunman vaulted the counter at teller position number two; in the second, the two "bag" men vaulted the counter at the same point. This apparent similarity loses most of its significance, however, because, under the government's theory of the case, Foutz was not one of the men who vaulted the counter in the second robbery, but was stationed near the door with a gun trained on the bank employees. In the first crime, the robber was described as wearing a turtleneck sweater and a beret-type hat; the person claimed to have been Foutz in the second robbery was described as wearing a wide-brimmed hat and perhaps a turtleneck. This possible, limited similarity of apparel is less than compelling. The first robber was last seen walking down a side street; the trio in the second crime fled in a getaway car which had been parked on the same street. Thus as far as the evidence revealed, the locomotive method of escape was different in each case; and use of a side street instead of a main thoroughfare in fleeing the site of a crime is not a uniquely ingenious stroke of criminal artistry.

the defendant's having engaged in prior or subsequent criminal conduct that is likely to be damaging in the eyes of the jury rather than

the details of its commission. *Baker v. United States*, 131 U.S.App.D.C. 7, 401 F.2d 958, 975 (1968) (footnote omitted).

We conclude that evidence showing that Foutz was one of the perpetrators of the March 13, 1975 robbery would not have been admitted to prove his identity as the perpetrator of the December 30, 1974 crime, had he been tried separately for that offense. We therefore conclude that Foutz was sufficiently prejudiced by the district court's denial of Foutz' motion for severance to constitute that denial an abuse of discretion requiring reversal.[4]

### III.

■ The government urges that any prejudice resulting from the joint trial of the two robberies was cured by the court's limiting instructions which required the jury to consider each offense and the evidence thereof separately. It is said that where the evidence is "simple and distinct," the jury can be trusted to segregate the evidence properly. This position finds some support in the cases. *See United States v. Adams*, 434 F.2d 756, 758–59 (2 Cir. 1970); *Drew v. United States*, 331 F.2d at 91–92 (dictum); *United States v. Lotsch*, 102 F.2d 35, 36 (2 Cir.), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939).[5]

While the law often permits the jury to hear evidence admissible for one purpose but not for another, and presumes that the jury will follow a limiting instruction, this practice is justified by practical considerations of trial convenience and expedition. *See United States v. Adams*, 434 F.2d at 759; ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance at 285; Note, supra, at 554. When offenses are initially joined

on the ground that they "are of the same or similar character," and evidence of one offense would not be admissible at a separate trial for the other, the saving of time effected by a joint trial is minimal. "Ordinarily, the only time saved by such joinder is the selection of one jury rather than two. Except for character witnesses, the evidence will usually be entirely separate." 8 Moore's Federal Practice ¶ 8.05[2] at 8–19 (footnotes omitted); *see* 1 Wright, Federal Practice and Procedure § 143 at 318; Note, supra, at 560. Thus, the only real convenience served by permitting joint trial of unrelated offenses against the wishes of the defendant may be the convenience of the prosecution in securing a conviction.

We therefore reject the government's argument. The reasons for the rule which the government invokes are largely inapplicable and the prejudice to the defendant, arising from the weakness of the government's one case and strength of the other, so marked that we cannot presume that the jury adhered to limiting instructions and properly "segregate[d] [the] evidence into separate intellectual boxes," *Bruton v. United States*, 391 U.S. 123, 131, 88 S.Ct. 1620, 1625, 20 L.Ed.2d 476 (1967), *quoting People v. Aranda*, 63 Cal.2d 518, 528–29, 47 Cal.Rptr. 353, 359–60, 407 P.2d 265, 271–72.

### IV.

■ Other factors are sometimes said to mitigate the prejudice flowing from joinder of unrelated offenses. In *United States v. Clayton*, 450 F.2d at 19, the First Circuit relied on the fact that the defendant re-

---

**4.** Our conclusion finds support in the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance at 291. Section 2.2(a) provides:

Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.

*See also* 8 Moore's Federal Practice ¶ 8.05[2] at 8.22 ("a persuasive argument [has been made] for *generally* barring joinder of similar offenses, except perhaps where they would be independently admissible as prior similar acts"); 1 Wright, Federal Practice and Proce-

dure § 143 at 317–18 ("It may fairly be asked, however, whether such joinder should ever be allowed."); Note, supra, at 560 (advocating complete abolition of similar offense joinder).

**5.** The "simple and distinct" test articulated in *Drew* may well be an appropriate standard for measuring the danger of prejudice resulting from the jury's confusing and cumulating the evidence. It does not address itself, however, to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers that finding probative of his guilt of another.

ceived concurrent sentences (as did Foutz) in upholding the district court's refusal to grant a severance. *See also* 8 Moore's Federal Practice ¶ 14.03 at 14–11; Note, supra, at 555. We are unpersuaded by this reasoning. Even if it could be concluded with the requisite degree of certainty that the defendant would have been convicted of at least one of the offenses in separate trials, conviction of two crimes instead of one may postpone parole eligibility or result in other serious consequences for the defendant. Thus, while concurrent sentencing may ameliorate the prejudicial effect of a joint trial, it cannot cure it completely.

It has also been said that where evidence of *both* crimes is overwhelming, no prejudice inheres in a joint trial. *See* Note, supra, at 555–56; *cf. United States v. Clayton,* 450 F.2d at 19 (evidence on both charges "strong"; "this was not an instance where a weak evidentiary case and a strong one were joined in the hope that an overlapping consideration of the evidence would lead to convictions on both"). The rule is inapplicable here.

We have no doubt that the government proved enough of a case against Foutz with respect to the March 13, 1975 robbery based principally on the positive identification of his automobile as the getaway car, to permit, but not require, the jury to find him guilty. In contrast, the only evidence of Foutz' involvement in the December 30, 1974 robbery, aside from its putative similarity to the later crime, was the testimony of two witnesses that Foutz' appearance was "similar" to that of the robber; and opposed to this testimony was an unusually strong alibi. We think it highly probable that a jury ignorant of the second crime and Foutz' alleged participation therein would have acquitted him of the earlier robbery. There is thus a strong likelihood that the jury found Foutz guilty of the second robbery, and then concluded that since he had once robbed the bank, it was plausible that he had done so before. Since

we cannot say that the government's case with respect to the March 13, 1975 robbery was indefensible, it is possible that the jury found him guilty of that crime under the rationale that with so much smoke there must be fire. Had the two offenses not been joined for trial, these "spillovers" could not have occurred, and Foutz might well have been acquitted of the first crime; possibly of both.[6]

We thus conclude that Foutz' convictions of both offenses must be reversed and he must be afforded new, separate trials.

## V.

Since we remand the case for new, separate trials, we need not reach Foutz' other assignments of error except for one that is likely to arise on retrial.

During its case-in-chief, the government sought to introduce the testimony of one Rodney Ingels, a Montgomery County police officer, concerning a telephone conversation he had with Foutz on March 15, 1972. In the conversation, Foutz stated that he "knew that he was going to jail." The government argued that this statement was admissible as evidencing consciousness of guilt. Foutz succeeded in having the statement excluded, however, because he persuaded the district court that his fear of incarceration had been based on an unrelated parole violation. The remainder of the conversation, in which Ingels informed Foutz that he was wanted for the bank robberies, was admitted.

It was stipulated that Foutz did not surrender himself, but was arrested on March 23, 1975. Thus, Foutz remained at large for eight days after learning that he was being sought by the authorities. Based on this fact, the government requested an instruction that intentional flight might be considered as reflecting consciousness of guilt. The court declined to give this instruction because it refused to equate Foutz' mere failure to surrender with active flight,

---

**6.** Joinder of similar offenses remains proper where evidence of one crime could be admitted at a separate trial for the other.

there having been no showing that he left Washington where he normally resided. Nevertheless, the government was permitted to argue the matter to the jury. This was error.

The inference that one who flees from the law is motivated by consciousness of guilt is weak at best, and the district court properly recognized that the strength of the inference is further attenuated when the defendant has not actively sought to avoid capture. The danger of permitting the inference is further compounded in a case such as this one where the defendant is wanted for another infraction.

> [I]n many situations, the inference of consciousness of guilt of the particular crime [based upon flight] is so uncertain and ambiguous and the evidence so prejudicial that one is forced to wonder whether the evidence is not directed to punishing the "wicked" generally rather than resolving the issue of guilt of the offense charged. Particularly troublesome are the cases where defendant flees when sought to be arrested for another crime, or is wanted for another crime . . . . Is a general sense of guilt to be accepted? McCormick, supra, § 271 at 655-56 (footnotes omitted).

We believe that under the circumstances of this case, no reference to flight should be permitted upon retrial, and that evidence to demonstrate flight should be excluded.

*REVERSED AND REMANDED.*

WIDENER, Circuit Judge (concurring):

I concur in the result and in the opinion of the court except part V.

I concur in the result in part V, but think the opinion should show that the defendant, in the telephone conversation involved, denied participation in the crime.

I further believe we should state that our ruling in part V may not apply if the defendant should testify in the new trials, and that we express no opinion on the point in such event.