UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

KEYSTON JAMORY WEST, a/k/a D,
a/k/a D-Man, a/k/a Alonzo Green,
                    *Defendant-Appellant.*

No. 02-4525

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

ANDREW CHARLES JACKSON, a/k/a
Sway, a/k/a Ricky Antonio Bady,
a/k/a William Benbow,
                    *Defendant-Appellant.*

No. 02-4526

Appeals from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-00-6; CR-00-46)

Argued: December 5, 2003

Decided: March 15, 2004

Before NIEMEYER and TRAXLER, Circuit Judges,
and Richard D. BENNETT, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Eric S. Black, TRUMP & TRUMP, Martinsburg, West Virginia, for Appellant Jackson; William Carroll Gallagher, CASSIDY, MYERS, COGAN, VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Appellant West. Paul Thomas Camilletti, Assistant United States Attorney, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** William Cipriani, CIPRIANI & PAULL, L.C., Wellsburg, West Virginia, for Appellant West. Thomas E. Johnston, United States Attorney, Thomas O. Mucklow, Assistant United States Attorney, Martinsburg, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

The Defendants/Appellants, Keyston Jamory West and Andrew Charles Jackson, were found guilty by a jury in the Northern District of West Virginia of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1),[1] the killing of an individual in furtherance of a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848(e)(1)(A) (Count 3), and distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 10). West was also convicted

---

[1]The conspiracy charged in Count 2 of the first indictment was dismissed by the trial court, and the Government proceeded on the conspiracy charged in a second indictment. That second indictment had been returned alleging the same conspiracy as the first indictment but added a specific designation as to 50 grams or more of crack cocaine in compliance with the mandates of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

under a separate count with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 11). Jackson was also convicted of engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 (Count 1), distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 4, 6, and 9), and the use and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 5).

The Defendants/Appellants claim that the District Court erred in (1) failing to sever Count 3 (the CCE murder charge) from the remaining counts and to grant separate trials; (2) failing to grant motions for judgments of acquittal as to the CCE murder charge (Count 3) because of insufficient evidence; and (3) abusing its discretion by permitting the Government to rehabilitate a witness by having the witness read portions of his prior statement. Jackson separately claims that the District Court abused its discretion in denying his motion for a continuance on the morning of trial. West separately claims that the District Court erred in (1) failing to sever the Defendants' trials; (2) permitting the Government to impeach him with evidence of his conviction of a crime carrying a penalty of more than one year; (3) permitting the Government to impeach him with evidence of false statements; and (4) improperly adjusting his sentence under Section 2D1.1(d)(1) of the United States Sentencing Guidelines by consideration of the homicide as relevant conduct of West's drug dealing.

Finding no prejudicial error in the trial or sentencing, we affirm.

## I.

Andrew Charles Jackson was a drug dealer in Martinsburg, West Virginia. From 1995 until 2000, he engaged in the distribution of crack cocaine by obtaining the drug in New York, New York and then using "runners" to sell the drug in the Martinsburg area. Keyston Jamory West joined with Jackson in the drug dealing operation in 1999. By this time Jackson was under investigation by law enforcement authorities. Corporal Ted Snyder, a West Virginia law enforcement officer, met with a confidential informant named Flora ("Sissy") Ray who assisted in the investigation by making controlled purchases of crack cocaine from Jackson in April and May of 1999 under the observation of law enforcement authorities.

In the summer of 1999, Jackson and West traveled to North Carolina with Vernel Newell (Jackson's girlfriend), Ricky Nelson, Tim Patterson and a nineteen year old girl named Vatressa Miller. Upon their return to Martinsburg from North Carolina, Jackson discussed in the presence of both Nelson and Patterson that Miller was a "snitch" and "something had to be done about her." An individual named Casey Holt was present at a conversation on July 18, 1999 between West and Jackson in which West expressed concern that Miller knew his real name.

On July 19, 1999, Jackson, West, Newell and Holt traveled with Miller in Holt's vehicle to an isolated area in Berkeley County, West Virginia, where they beat Miller with an axe handle and log, punched and kicked her, and left her to die. Subsequently, the daughter of the confidential informant Flora Ray advised her mother that West had admitted to her that he participated in the murder of Vatressa Miller. When Ray confronted West, he stated that Miller "was a snitch" and suspected of informing law enforcement authorities of Jackson's and West's drug operation.

In January of 2000, indictments were returned against Jackson, West, Newell and Holt. Pursuant to plea agreements, Newell and Holt cooperated with authorities and provided information with respect to the murder and the drug distribution ring. Both testified at the trial of the case, as did other witnesses who testified as to the distribution of crack cocaine by Jackson and West, as well as Jackson's possession of a handgun in connection with drug transactions.

After his arrest, Jackson was provided with counsel pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A (2000). On March 3, 2000, the District Court ordered that the first attorney be removed and appointed attorney Jeffery Harris to represent Jackson. Three weeks later, the Court issued an order granting Jackson's motion to have Harris replaced by attorney Keith Wheaton, whom Jackson had privately retained. However, on July 20, 2000, the District Court once again appointed Harris because of the possibility that the death penalty could be imposed. Attorney Wheaton remained in the case as co-counsel for Jackson. One and a half years later, on the eve of trial in January of 2002, Wheaton advised the Court that he believed that he had a conflict of interest because he had previously represented three

of the Government witnesses in the case. In light of the fact that Mr. Harris was lead counsel, the District Court agreed with the suggestion of Harris that a second attorney could be appointed to replace Wheaton to assist him in the representation of Jackson. Accordingly, the Court appointed James Zimarowski as new counsel on January 11, 2002 to assist Harris. The case proceeded to trial on January 15, 2002. The District Court denied Jackson's motion for a continuance on the morning of trial.

At the trial of the case, West testified and admitted to the distribution of crack cocaine charged in the indictment. West denied any involvement in the murder of Vatressa Miller and attempted to provide an alibi for both himself and Jackson. At the conclusion of the trial, West and Jackson were convicted on all pending counts of the first indictment as well as the single count of conspiracy in the second indictment.

## II.

West and Jackson jointly raise three challenges to their convictions. First, they contend that the District Court abused its discretion by not severing the continuing criminal enterprise ("CCE") murder count (Count 3) from the remaining counts and conducting separate trials. Second, they challenge the sufficiency of the evidence with respect to the CCE murder count. Third, they contend that the District Court abused its discretion by permitting a Government witness to be rehabilitated by reading portions of a prior statement.

### A.

Pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure, there may be joinder of offenses in an indictment where they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan". If this joinder of offenses in an indictment "appears to prejudice a Defendant . . . the Court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14. The second indictment in this case, in charging a conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base (crack cocaine), specifically alleged a series of overt acts

in furtherance of the conspiracy. Overt act #19 specifically charged that Jackson, West and others "physically assaulted and killed . . . Vatressa Maria Miller. The purpose of the killing was because defendants . . . Jackson [and] West . . . believed that the said Vatressa Maria Miller was cooperating with law enforcement officers and defendants . . . wanted to protect their crack cocaine distribution activities."

This Court in *United States v. Foutz*, 540 F.2d 733 (4th Cir. 1976), analyzed the balancing of Rules 8 and 14 in reviewing the joinder of offenses. In *Foutz*, we noted that:

> In the instant case, joinder was initially permissible only because the offenses were of the same or similar character. When two or more offenses are joined solely on this theory, three sources of prejudice are possible which may justify the granting of a severance under Rule 14 . . . .

*Id.* at 736. Because the joinder of two separate bank robberies in one indictment was based solely on their being of the same or similar character, this Court in *Foutz* held that there was prejudice which mandated a severance under Rule 14. *Id.* at 737-38.

In this case, the CCE murder charge in Count 3 was also charged as an overt act in furtherance of the conspiracy charged in the second indictment. There was specific testimony linking the murder of Vatressa Miller to the protection and security of the drug distribution ring. The murder was part of the conspiracy, and part of the common scheme or plan. As we noted in *Foutz*,

> When offenses are joined under Rule 8 on the ground that they 'are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan', it is manifest that evidence of one offense would ordinarily be admissible at a separate trial for the other.

*Id.* at 737. In the present case, the conspiracy to operate the drug distribution ring in Martinsburg, West Virginia, the specific acts of dis-

tribution and the murder of a suspected "snitch" are clearly intertwined. Furthermore, the District Court correctly noted that, in light of *Foutz* and the existence of a common plan, evidence of one criminal offense would be admissible at the trial of the other criminal offenses.

The evidence of the murder of Vatressa Miller would have been admissible at a separate trial on the drug charges in this case. This Court has previously held that evidence of discussion of an *uncharged* murder-for-hire was properly admitted and was "inextricably intertwined with [the] crime of selling heroin and conducting an ongoing criminal enterprise." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996). This evidence was not even deemed to be evidence submitted pursuant to Rule 404(b) of the Federal Rules of Evidence relating to prior bad acts. In *Chin*, we noted that such an act was "intrinsic to the crime charged" and that "[k]illing people was an integral part of [the] criminal enterprise, . . . and the threat of killing viewed as necessary to ensure deals were completed . . . ." *Id.*

The District Court also noted this Court's opinion in *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), where a CCE murder charge, similar to that charged in this case, was deemed to be admissible at the trial of any other offenses as intrinsic to drug cases. The District Judge in this case correctly ruled that the evidence with respect to the murder charge would have been admissible in any separate prosecution and that there was appropriate joinder of offenses.

West and Jackson argue that they were "confounded" in asserting their defenses to the CCE murder charge while also facing the joined drug charges. West places heavy reliance upon *Cross v. United States*, 335 F.2d 987 (D.C. Cir. 1964), which held that there was prejudicial joinder when a defendant desired to testify as to one count and to remain silent as to the other. As the District Court correctly noted in its analysis, this Court in *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984), has noted that a Defendant must make a "strong showing of prejudice." In *Goldman*, we reviewed the opinion of the United States Court of Appeals for the District of Columbia Circuit in *Baker v. United States*, 401 F.2d 958 (D.C. Cir. 1968), *cert. denied*, 400 U.S. 965 (1970), which followed that Court's earlier ruling in the *Cross* case. This Court specifically noted in *Goldman*:

> A defendant making a motion for severance pursuant to Rule 14 has the burden of demonstrating a strong showing of prejudice, . . . and it is not enough to simply show that joinder makes for a more difficult defense. . . . The fact that a separate trial might offer a better chance of acquittal is not a sufficient ground for severance.

*Id.* at 1225 (citations omitted).

The District Judge conducted an appropriate analysis relying on this Court's directions in *Goldman*. Jackson made no proffer other than to suggest that he would deny being at the scene of the murder. West, who ultimately chose to testify, similarly made no proffer other than a denial of being present. The trial judge noted that either defendant could withhold any decision until the last moment prior to testifying. There was no showing by either West or Jackson that there was any important testimony to offer as to the murder charge other than their blanket denial. There was no showing as to the need to refrain from testifying as to the drug charges. There were no specific alibis proffered. Indeed, West ultimately testified that he was in his vehicle alone traveling from West Virginia to North Carolina at the approximate time of the murder. Jackson and West did not proffer any specifics as to any alibis. Ultimately, West's testimony at trial was not corroborated by any other witnesses. Thus, West and Jackson failed to make the showing necessary for the granting of severance as to the CCE murder charge.

B.

Both West and Jackson challenge their convictions on the CCE murder charge (Count 3) claiming insufficiency of the evidence. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). The evidence in this case, viewed in the light most favorable to the Government, was overwhelming not only as to the murder charge, but also as to the fact that the murder was perpetrated in furtherance of the criminal enterprise of illegal drug distribution. Two of the participants in the murder of Vatressa Miller, Newell and Holt, testified not only as to the participation of West and Jackson but also as to their joint concern that Mil-

ler was an informant for the Government. Flora Ray testified that West made admissions to her concerning the murder and evidenced concern that the victim was a "snitch." Two witnesses, Tim Patterson and Ricky Nelson, testified as to West's concern that Miller was providing information to law enforcement authorities and West's specific comment that "something had to be done about her."

The standards of this Court for reviewing the sufficiency of the evidence to support any conviction are well established. The question is whether "*any* rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982)(citations omitted). As Chief Judge Ervin of this Court noted in subsequent opinions in *United States v. Baker*, 985 F.2d 1248, 1251 (4th Cir. 1993), *cert. denied*, 510 U.S. 1040 (1994), and *United States v. Reavis*, 48 F.3d 763, 771 (4th Cir. 1995), the question "is not whether the appellate court is convinced beyond a reasonable doubt." West and Jackson bear a heavy burden in challenging the sufficiency of the evidence after a jury verdict, and they fail to meet this burden. The convictions of both on the CCE murder count are affirmed.

## C.

Both West and Jackson contend that the District Court abused its discretion by permitting the Government witness, Ricky Nelson, to be rehabilitated by reading portions of prior statements into the record. Nelson provided significant testimony for the Government. He testified that he spoke with West after West returned from North Carolina. According to Nelson's testimony, West had stated that he believed that "something had to be done" about Vatressa Miller. He further testified that West was holding a knife in his hand during this conversation. He also testified that Tim Patterson was not present during this conversation.

On cross-examination, Nelson was subjected to rigorous and aggressive cross-examination. Counsel for West impeached Nelson with a prior statement where Nelson had made no mention of West holding a knife. Nelson was also challenged with a prior statement in which he had stated that Patterson was present when West made com-

ments to him. Portions of cross-examination by West's counsel pro-
ceeded as follows:

> Q.:    You don't know what the truth is, do you Mr. Nelson?

> A.:    Yeah, I know what the truth is.

> Q.:    The truth is you were in trouble with drugs, and you
>        were cooperating with the police to try to get off the
>        hook? Isn't that true, Mr. Nelson?

> A.:    No sir.

> Q.:    Isn't it true, Mr. Nelson, that when we met with you,
>        you said "I'm sticking to my story". Isn't that true?
>        You told us that?

> A.:    No sir.

During his cross-examination, counsel for Jackson referred to the
"added features" of Nelson's testimony and the "favorable treatment"
Nelson had received. After this cross-examination, the District Court
permitted the witness to read prior statements and prior Grand Jury
testimony which were consistent with West's testimony at trial.

   It is clear that a District Court's evidentiary ruling will not be
reversed absent an abuse of discretion. *United States v. Lancaster*, 96
F.3d 734, 744 (4th Cir. 1996); *United States v. Queen*, 132 F.3d 991,
993 (4th Cir. 1997). A witness may be rehabilitated with a prior con-
sistent statement, which is not deemed to be hearsay, if the statement
is "consistent with the declarant's testimony and is offered to rebut an
express or implied charge against the declarant of recent fabrication
or improper influence or motive." Fed. R. Evid. 801(d)(1)(B). It is
abundantly clear from the record that counsel for West and counsel
for Jackson made implied charges of improper influence or motive as
to the witness Nelson. Counsel for West directly charged fabrication
in his challenge to Nelson's knowledge or lack thereof as to the truth.
Consistent with the principles set forth in *Tome v. United States*, 513
U.S. 150 (1995), the prior statements read to the jury predated any

efforts with respect to alleged recent fabrication or motive to satisfy Government authorities. *See generally* 1 *McCormick on Evidence* § 47 (5th ed. 1999).

The precise question not addressed by West and Jackson in their briefs or in oral argument before this Court is whether all of the admitted statements were *consistent* as required by Rule 801(d)(1)(B). The record reflects that counsel for Jackson noted in his objection that Nelson was merely "regurgitating his testimony." With respect to the presence of the witness, Tim Patterson, during the discussions of the problems with Vatressa Miller, the prior statements read by Nelson did *not* state that Patterson was not present as Nelson had testified. Thus, some of the admitted statements may not have been consistent with Nelson's trial testimony. Any error in admitting these statements seems harmless, because other portions of the admitted statements were consistent with Nelson's testimony and were made well before any alleged motive to create testimony at trial. The prior consistent statements were offered to rebut an inference that Nelson fabricated testimony to satisfy the Government. Therefore, the District Court did not abuse its discretion in admitting Nelson's prior statements.

### III.

Jackson raises one additional challenge to his conviction. He contends that the District Court abused its discretion in denying his motion for a continuance on the morning of trial. It is clear from the record that Attorney Jeffrey Harris represented Jackson for over one and a half years prior to the trial of the case, having been appointed by the District Court. Furthermore, Harris served as lead trial counsel for Jackson throughout the trial. Attorney Keith Wheaton had acted as co-counsel until advising the Court on the eve of trial that he believed he had a conflict of interest because he had previously represented some of the Government's witnesses. It was Harris' suggestion that a second lawyer, James Zimarowski, be appointed by the Court to assist him at trial. The record reflects that Harris and Zimarowski are both experienced criminal defense attorneys. Furthermore, the record of the case clearly indicates that Jackson did not state any objection or move for a continuance until the morning of trial.

The District Court in denying a continuance correctly relied upon our holding in *United States v. Robinson*, 275 F.3d 371 (4th Cir.

2001). In that case, this Court noted our earlier opinion in *United States v. Boone*, 245 F.3d 352 (4th Cir. 2001), in which we held that a defendant charged with a death-eligible crime is entitled to representation by two attorneys regardless of the Government's decision not to seek the death penalty pursuant to 18 U.S.C. § 3005. Nevertheless, in *Robinson*, we declined to reverse the conviction of a non-capital defendant entitled to representation by a second attorney because the trial court's error "did not affect the fairness, integrity, or public representation of judicial proceedings." 275 F.3d at 384. Despite the latitude accorded to the District Court by our opinion in *Robinson*, the trial judge in this case appointed a second attorney for the non-capital defendant Jackson to assist lead counsel in the case. Furthermore, Jackson had the benefit of Attorney Wheaton in pre-trial preparation until the eve of trial.

Jackson has failed to show any prejudice from the denial of his motion for a continuance. The record reflects Harris' role as lead counsel. The second attorney, Zimarowski, vigorously conducted the cross-examination of eleven Government witnesses. As this Court noted in *United States v. Lawrence*, 161 F.3d 250, 254 (4th Cir. 1998):

> A District Court is entitled to broad discretion with respect to a decision to deny a continuance. . . . Specific errors must be shown which "undermine confidence in the outcome of the trial" to constitute reversible error. (Citations omitted.)

Jackson has failed to show any such errors in this case.

IV.

West raises four additional challenges to his convictions. First, he contends that the District Court abused its discretion by not granting him a severance from Jackson and that he was prejudiced by a joint trial. Second, he says the District Court erred in permitting the Government to impeach him during his testimony with a conviction of a crime carrying a penalty of more than one year. Third, he contends that the District Court erred in allowing the Government to impeach him with a false statement not disclosed to him prior to trial. Fourth,

West says that the District Court erred when it applied Sentencing Guideline section 2D1.1 to his conviction for drug law violations. We address these additional separate claims by West in turn.

A.

West contends that the District Court erred in not granting his motion for severance and granting him a separate trial from Jackson. The trial judge found appropriate joinder of West and Jackson pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure and denied a pretrial motion for severance made pursuant to Rule 14. West argues that the evidence against Jackson was much stronger and that he was prejudiced by a joint trial. West fails to meet the heavy burden on this issue.

The Government's evidence showed that West and Jackson engaged in a series of drug transactions which constituted a continuing criminal enterprise. The drug distribution of West and Jackson was part of the same series of transactions that were connected with the murder of Vatressa Miller. West and Jackson were jointly charged in the drug conspiracy.

As this Court has noted in *United States v. Brooks*, 957 F.2d 1138, 1145 (4th Cir. 1992), "Defendants who have been charged in the same conspiracy indictment should ordinarily be tried together." We also have held in *United States v. Roberts*, 881 F.2d 95, 102 (4th Cir. 1989), that:

> The issue of whether there is sufficient prejudice to warrant a severance is a question committed to the sound discretion of the trial court. . . . A showing that a defendant would have a better chance of acquittal in a separate trial does not establish prejudice sufficient to require severance. (Citations omitted.)

The record before the District Court at the time of its ruling showed insufficient prejudice to warrant a severance. Furthermore, the complete record of this case is replete with evidence of West's guilt apart from any evidence introduced against Jackson. Eyewitness testimony

of West's participation in the murder of Vatressa Miller was presented. West was separately convicted of illegal drug distribution. Furthermore, the trial judge properly instructed the jury that it was to give separate consideration to the evidence concerning each Defendant, that each Defendant was entitled to receive separate treatment and that the jury was to return a separate verdict for each Defendant.

A district court's denial of a motion for severance "will not be overturned absent a clear abuse of discretion." *United States v. Haney*, 914 F.2d 602, 606 (4th Cir. 1990). The District Court did not abuse its discretion in this case in denying West's motion for severance.

### B.

West next argues that the District Court erred in permitting the Government to impeach him with evidence of his conviction of a crime carrying a penalty of more than one year.

West testified at trial and was cross-examined by the Government with respect to his activities in Texas when he was eighteen years old. He was then shown an arrest photograph of himself, at which time defense counsel objected. The District Court conducted an *in camera* evidentiary conference and subsequently admitted the photograph and evidence of West's Texas conviction for "unauthorized use of a vehicle." West concedes that that crime carries a penalty of more than one year. However, West contends that the District Court did not conduct the appropriate balancing test noted in Rule 403 of the Federal Rules of Evidence.

Rule 609(a) of the Federal Rules of Evidence provides that evidence that "an accused has been convicted" of a crime punishable by imprisonment in excess of one year "shall be admitted if the Court determines that the probative value of admitting this evidence outweighs the prejudicial effect to the accused." Fed. R. Evid. 609(a). The record of this case indicates that the District Court, at the evidentiary conference, weighed the probative value of the Defendant seeking to conceal his real name and the fact that he was concerned that the murder victim, Vatressa Miller, knew that name. After conducting the balancing test, and noting the standards set forth in *Ohler v. United States*, 529 U.S. 752 (2002), the District Court admitted the

evidence. The Court also gave an appropriate cautionary instruction to the jury that the evidence was being offered as to credibility only.

It is clear from the record, and from the District Court's ruling on post-trial motions, that the evidence was also admitted to show the identity of the Defendant, which was related to other evidence involving Vatressa Miller. In addition, West was in possession of his criminal record prior to trial and made his decision to testify with full knowledge of his prior conviction.

West has shown no prejudice from the admission of this evidence. Indeed, West's admission to drug activities is far more serious than the unauthorized use of a motor vehicle when he was eighteen years old. The record does not indicate an abuse of discretion by the District Court in its ruling on this evidentiary issue.

### C.

West next contends that the District Court erred in permitting the Government to impeach him with evidence of a false statement not made known previously to him.

During the cross-examination of West, the Government confronted him with a photograph and a police report referencing an individual named "Alonzo Green." Over objection of defense counsel, the District Court permitted the Government to question West about this photograph. West admitted that the photograph was of himself and that he had lied to North Carolina law enforcement authorities to conceal his own identity. Defense counsel contended that any statement by West should have been disclosed to him in pre-trial discovery, as required by Rule 16 of the Federal Rules of Criminal Procedure. Furthermore, counsel for West argued that the evidence did not involve a crime of dishonesty. The District Court admitted the evidence on the issue of Defendant's identity as well as his credibility.

West's argument on this issue is without merit. First, Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure requires the Government to disclose to a defendant "any relevant oral statement made by the defendant, before or after arrest, in response to interroga-

tion by a person the defendant knows was a Government agent." A false statement made by a defendant offered in response to a question in another matter with respect to routine information does not amount to a statement within the purview of Rule 16. *See*, *e.g.*, *Pennsylvania v. Muniz*, 496 U.S. 582 (1990). Furthermore, the indictment in this case listed the name of "Alonzo Green" as an alias of West. It was not an abuse of the District Court's discretion to admit direct evidence of the alias used by West.

D.

Finally, West argues District Court error in the application of section 2D1.1(d)(1) of the United States Sentencing Commission Guidelines.

With respect to drug offenses, section 2D1.1 provides base offense levels for defendants convicted under 21 U.S.C. § 841. Section 2D1.1(d)(1) specifically provides for a cross-referencing of Guideline section application "if a victim was killed under circumstances that would constitute murder." The District Court accordingly adjusted the sentence to a base offense level of 43 by applying section 2A1.1. As we noted in *United States v. Pauley*, 289 F.3d 254, 258 (4th Cir. 2002), on a similar "murder cross-reference" Guideline question, "whether a particular cross-reference should be applied depends on whether the conduct to which the cross-reference refers is 'relevant conduct'" as defined in section 1B1.3. The District Court had previously ruled that the CCE murder count was part of the same acts and in furtherance of the drug conspiracy. Accordingly, the murder was found by the Court to be "relevant conduct" resulting in cross-referencing at sentencing.

West acknowledges that his argument on this issue is essentially a renewed challenge on the sufficiency of the evidence on his CCE murder charge. He contends that, assuming *arguendo* that he was involved with that murder, the evidence was insufficient to establish that the murder was part of a drug conspiracy or in furtherance of a continuing criminal enterprise. For the reasons set forth earlier, West's challenge to the sufficiency of the evidence is without merit. There is abundant evidence to support the District Court's finding that West participated in the murder of Vatressa Miller because he feared

she was a "snitch" and was a threat to the drug distribution conspiracy. The evidence is quite clear that West felt "something had to be done" about Miller to protect the drug operation.

This factual determination by the District Court at sentencing is reviewed by this Court for clear error. 18 U.S.C. § 3742; *United States v. Fletcher*, 74 F.3d 49, 55 (4th Cir. 1996). Finding none, we hold that the murder cross-reference was appropriate in the sentencing of West and affirm that sentence.

V.

For the reasons set forth above, we affirm the convictions and sentences of Jackson and West.

*AFFIRMED*.