UNITED STATES of America, Appellee,

v.

**Sandy H. GOLDMAN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Teresa L. CRUSH, Appellant.**

**Nos. 84–5003, 84–5004.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1984.

Decided Dec. 20, 1984.

Thomas A. Livingston, Pittsburgh, Pa. (Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., on brief) and Joan Gaughan Devlin, Pittsburgh, Pa., for appellants.

Thomas O. Mucklow, Philippi, W. Va. (William A. Kolibash, U.S. Atty., Linda Bordas, Legal Intern, Betsy C. Steinfeld, Asst. U.S. Atty., Wheeling, W. Va., on brief) for appellee.

Before WINTER, Chief Judge, RUSSELL and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

Appellants, Goldman and Crush, were convicted by a jury in the Northern District of West Virginia under Counts 1 and 2 of the indictment, and appellant Goldman was also convicted of Counts 4, 5, 6, 8, 9, 11, 12 and 13 but he was acquitted on Counts 3, 7

and 10. Count 1 charged both Goldman and Crush with a conspiracy to possess cocaine, with an intent to distribute it between November 1979 and May 1980 in the Northern District of West Virginia, in violation of 21 U.S.C. § 846. Count 2 charged Goldman and Crush with a conspiracy to possess hashish, with an intent to distribute it between November 1982 and March 5, 1983, in the Northern District of West Virginia, in violation of 21 U.S.C. § 846. The remaining counts, except Count 5, charged Goldman with the use of a communication device in facilitating the distribution of a controlled substance in violation of 21 U.S.C. § 843(b). Count 5 charged Goldman with using a facility in interstate commerce, the United States Mail, to promote and to facilitate the carrying on of an unlawful activity in violation of 18 U.S.C. § 1952(a)(3) and (2).

Appellants claim that the district court erred in (1) failing to sever Counts 1 and 2 and grant separate trials; (2) failing to sever the defendants' trials; (3) failing to charge the jury that it must find the Northern District of West Virginia to be the proper venue as to Counts 1 and 2; (4) failing to grant an acquittal as to Count 5 because of a variance between the allegations of the indictment and the proof at trial; (5) failing to grant Goldman's motion for judgment of acquittal as to Count 1 because of insufficient evidence; and (6) failing to grant appellant Crush's motion for a judgment of acquittal as to Counts 1 and 2 because of insufficient evidence.

Finding no prejudicial error in the trial, we affirm.

## I

John DeSantis began dealing in cocaine, marijuana, hashish, and quaaludes in 1975. He sold these drugs in West Virginia, Pennsylvania, and Ohio. From time to time he would sell small quantities of cocaine to appellant Teresa Crush. In the spring of 1980 he sold Crush two ounces of cocaine on credit. This cocaine was lost in a flood, and Crush remained in debt to DeSantis for $3,800, the agreed purchase price. In an effort to work out a means of repaying this debt, DeSantis required Crush to introduce him to one of her other drug connections. Crush then introduced DeSantis to Sandy H. Goldman. Goldman and DeSantis met in Morgantown, West Virginia, and discussed a number of drugs, particularly cocaine. Goldman indicated he could supply DeSantis with large quantities of cocaine, and for the next several months, DeSantis purchased cocaine from Goldman. These cocaine deals ended about January 1981. During this time Goldman was living in Sutton, West Virginia, DeSantis was living in Morgantown and Wheeling, West Virginia, and Crush was living in Bridgeport, West Virginia.

In the spring of 1981, DeSantis abandoned the drug business. In the fall of 1982, however, he was contacted by Pennsylvania law enforcement officers and was subpoenaed to testify before a Pennsylvania grand jury investigating the drug business. He then entered into an agreement with the office of the Attorney General of Pennsylvania whereby he agreed to provide information regarding his drug dealings and to cooperate with the police. DeSantis testified in the present case under a grant of immunity, and the facts related herein are largely taken from his testimony.

In February 1983 DeSantis talked several times by telephone with Goldman, who was then in Colorado, regarding the purchase of cocaine and hashish. At the time Goldman had no cocaine, but it was agreed that Goldman would sell DeSantis approximately 100 pounds of hashish and that Crush would receive $20 per pound from this sale. These telephone calls were recorded and later played at the trial. Goldman forwarded a sample of the hashish to DeSantis in a Federal Express package, and this transaction is the basis of Count 5 of the indictment. The various telephone conversations resulted in the substantive counts in the indictment regarding the use of communication devices to facilitate the distribution of hashish. There was also a telephone conversation between DeSantis

and Crush in which she asked to be of assistance in the hashish transaction.

On March 5, 1983, Goldman and Crush, having traveled from Colorado to Pennsylvania, made a delivery of hashish to DeSantis. At this time they were arrested and charged as set forth in the indictment.

## II

Following indictment both appellants moved to sever counts 1 and 2 of the indictment and also to sever the defendants' trials. Federal Rule of Criminal Procedure 8(a) provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

In *United States v. Foutz*, 540 F.2d 733 (4th Cir.1976), we discussed Rules 8 and 14 stating:

> We begin our analysis with Rule 8 which permits joinder under three circumstances: (1) if the offenses "are of the same or similar character"; (2) if they "are based on the same act or transaction"; or (3) if they are based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In the instant case, joinder was initially permissible only because the offenses were of the same or similar character. When two or more offenses are joined for trial solely on this theory, three sources of prejudice are possible which may justify the granting of a severance under Rule 14: (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

540 F.2d at 736 (citations omitted). In *Foutz*, we held that a joinder of two separate bank robberies in one indictment prejudiced a defendant because the jury might conclude that if the defendant was guilty of one crime it would find him guilty of the other and because there was no common element which could be considered a so-called "handiwork" or "signature" exception to the other crimes rule. *Id.* at 737.

 In the present case we not only have counts of the indictment alleging offenses which "are of the same or similar character" but we also have "two or more acts or transactions connected together or constituting parts of a common scheme or plan." The actors in the two conspiracies are the same, even though DeSantis could not be considered a member of the second conspiracy. The purpose of the conspiracies was to possess with intent to distribute controlled substances, in the first count cocaine and in the second count hashish. The common thread running through both conspiracies was the effort by Crush to settle her debt to DeSantis by arranging for DeSantis and Goldman to engage in drug transactions. In the first conspiracy she was reducing her debt through credits

given by DeSantis, and in the second conspiracy she was being paid a part of the purchase price by Goldman.

At the time the motion for severance was made, prior to the trial, the judge indicated that he had confidence that the jury could make a distinction between the parties and among the various counts. This prediction was proved correct when the jury returned not guilty verdicts as to Counts 3, 7, and 10, which indicated that it had considered the evidence as to each count separately and that it did not allow any "spillover effect" to result in a verdict of guilty on all counts.

If there had been a severance of Counts 1 and 2, the evidence under Count 1 would in all probability have been admitted under Federal Evidence Rule 404(b) in the trial as to Count 2. The substantive counts so obviously applied to Count 2 that they would not have prejudiced the defendants under Count 1.

The defendants have made no showing that they were "confounded in presenting defenses." Although they argue that they may have wanted to testify as to one count and not take the witness stand as to another, there has been no showing or proffer of which count they would have elected to assert their fifth amendment privilege against self-incrimination. Without some proffer by the defendant as to the testimony he might wish to present on one count, while not wishing to testify on the other, the district court was left with a guessing game. This predicament has been explained in *Baker v. United States*, 401 F.2d 958, 976–77 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970):

> The essence of our ruling in *Cross [v. United States*, 335 F.2d 987 (D.C.Cir. 1964)] was that, because of the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma; whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than

risk the prejudice (as to either or both counts) that would result from testifying on the other. Obviously no such dilemma exists where the balance of risk and advantage in respect of testifying is substantially the same as to each count. Thus unless the "election" referred to by appellant is to be regarded as conclusive—and we think it should not be—no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.

401 F.2d at 976–77 (citations omitted).

A defendant making a motion for severance pursuant to Rule 14 has the burden of demonstrating a strong showing of prejudice, *United States v. Niederberger*, 580 F.2d 63 (3d Cir.1978), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), and it is not enough to simply show that joinder makes for a more difficult defense. *United States v. Jordan*, 602 F.2d 171 (8th Cir.1979), *cert. denied*, 444 U.S. 878, 100 S.Ct. 165, 62 L.Ed.2d 107 (1979). The fact that a separate trial might offer a better chance of acquittal is not a sufficient ground for severance. *United States v. Hopkinson*, 631 F.2d 665 (10th Cir.1980) *cert. denied*, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981).

In the present case the defendants have failed to make the showing necessary for the granting of a severance as to counts or as to parties.

### III

Appellants contend that the district court erred in failing to instruct the jury

that it must find that the conspiracy agreement was formed in the Northern District of West Virginia and that venue was a question of fact. Appellants contend that since the activities took place in Colorado, Pennsylvania, and West Virginia, a jury finding that the conspiracy was formed in the Northern District of West Virginia was necessary to validate Goldman's conviction. Since the commission of an overt act in furtherance of the conspiracy is not required in a 21 U.S.C. § 846 conspiracy, as it is in an 18 U.S.C. § 371 conspiracy, defendants argue that the agreement itself must have been formed in the Northern District of West Virginia. Appellants' argument is not supported by any authority. The cases cited by appellants all deal with the proposition that trial courts are required to give the jury a full statement of the law.

▮ Counts 1 and 2 of the indictment do not charge that the conspiracies were restricted to the Northern Judicial District of West Virginia, but instead charge that they were carried out "within the Northern Judicial District of West Virginia, and elsewhere." The district judge charged that the commission of at least one overt act in furtherance of some object or purpose of the conspiracy was an essential element which the prosecution must prove beyond a reasonable doubt under Counts 1 and 2. Every court which has faced the question has concluded that an overt act within the district is sufficient for venue, even though the language of 21 U.S.C. § 846 does not mention overt acts. *See United States v. Cooper*, 606 F.2d 96 (5th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980); *United States v. Smith*, 692 F.2d 693 (10th Cir.1982); *United States v. Davis*, 666 F.2d 195 (5th Cir. 1982); *United States v. Nicoll*, 664 F.2d 1308 (5th Cir.1982), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982); and *United States v. Fanello*, 662 F.2d 505 (8th Cir.1981). There is no requirement that a 21 U.S.C. § 846 conspiracy be formed within the district where the indictment is returned and the trial is held.

## IV

Appellants contend that there is a fatal variance between the language of the indictment and the proof at trial regarding the use of a facility in interstate commerce to facilitate the promotion of the unlawful activity. In Count 5 of the indictment it is alleged that in February 1983 Goldman "did use and cause to be used a facility in Interstate Commerce, that is the United States Mail." This count had to do with a movement of a sample of hashish from Boulder, Colorado, to Wheeling, West Virginia. DeSantis testified that he was not present when the package arrived at his office, but he believed the package came by Federal Express.

▮ It is well established that the due process clause requires that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime with which the accused is charged. *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Goldman argues that there is no evidence that the mails were used and the only testimony points to Federal Express as the facility in interstate commerce used to transport the hashish.

▮ A violation of 18 U.S.C. § 1952(a) requires the use of *any* facility in interstate commerce to promote the unlawful activity. Federal Express is such a facility and so is the United States Mail. Such a variance does not constitute an addition to the indictment, nor has there been any showing that Goldman was prejudiced in any way by the testimony of DeSantis that he thought the package had arrived by Federal Express. Goldman could hardly charge surprise at this slight variance nor could he claim that it impaired his defense to the charge. We cannot see where Goldman's defense would have differed if DeSantis had testified that the sample arrived by mail rather than by Federal Express.

▮ In analyzing variances between allegations of the indictment and proof at trial, the Supreme Court has set forth a case-by-case approach, and reversal is required only where the appellant can show actual

prejudice. *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). No such showing has been made on the present record.

## V

■ "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Goldman challenges his conviction on Count 1 claiming insufficient evidence and Crush challenges her convictions on Counts 1 and 2. The recitation of facts contained herein is sufficient to show that both Goldman and Crush were active members of the conspiracies charged in Counts 1 and 2 of the indictment. "The essence of conspiracy under section 846 is an agreement to violate narcotics laws." *United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982) (citing *United States v. Spradlen,* 662 F.2d 724, 726 (11th Cir.1981)). It is not necessary that each member of a conspiracy have knowledge of all of the details of the conspiracy, but it is only necessary that a conspirator have knowledge of the essential object of the conspiracy. Here the object of the conspiracy was to violate the narcotics laws and the evidence amply supports the conclusion that both Goldman and Crush had such knowledge and were active participants in the undertaking.

AFFIRMED.