896 F.2d 548
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph Freeman RODRIGUES, Defendant-Appellant.
 No. 89-5089.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 8, 1989.
Decided: Feb. 6, 1990.
 
 Christopher M. Davis, on brief, for appellant.
 Breckinridge L. Willcox, United States Attorney; Martin S. Himeles, Jr., Assistant United States Attorney; William K. Meyer, Assistant United States Attorney, on brief, for appellee.
 Before WIDENER and WILKINSON, Circuit Judges, and HAYNSWORTH,* Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Joseph Freeman Rodrigues appeals his conviction in the United States District Court for the District of Maryland on one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. Sec. 846. Rodrigues contends that the district court erred in its response to an inquiry from the jury during its deliberations by failing to instruct the jury that the offense of conspiracy to distribute cocaine requires that the conspirator have agreed to distribute to a third person rather than to a co-conspirator. Rodrigues also argues that the district court erred in permitting the prosecution in closing argument to indicate that Rodrigues had lied in denying that he was placed on probation for having committed an earlier crime, when in fact Rodrigues was never actually placed on probation. Finding both of these contentions to be without merit, we affirm the judgment of the district court.
 
 I.
 
 2
 On July 26, 1988, Gary Wells contacted Chad Lane, a government informer who had formerly been a cocaine supplier of Wells, about a prospective purchase of cocaine by Wells. The two met on July 29, 1988, at a restaurant in Odenton, Maryland. Wells reiterated his interest in purchasing cocaine, and Lane assured him that he had access to cocaine. They agreed to discuss the purchase again at a later date.
 
 
 3
 Wells and Lane met again at the same restaurant on August 24, 1988. During their recorded conversation, Wells agreed to purchase one kilogram of cocaine from Lane for $21,000, $15,000 of which was to be paid at the time of delivery and the remainder to be paid shortly thereafter. Wells indicated that he would arrange for someone else to assist him in the deal and that once those arrangements were complete he would meet Lane again to discuss the details.
 
 
 4
 Wells and Lane met a final time on September 14, 1988. Again their conversation was recorded. Wells described in detail his plan for the cocaine transaction. He proposed that delivery of the cocaine take place at the Governor's Bridge, located at the county line separating Prince George's and Anne Arundel Counties. He would have a trustworthy friend rent a car, park it near the bridge, and then descend to the river below and appear to be fishing. The car was to be rented so that if Wells' friend were pulled over by the police, he could disclaim knowledge that the cocaine was in the car. While Wells' friend was fishing, Lane was to remove the $15,000 that Wells would place in the trunk of the car and replace it with the cocaine. The transaction was to take place at 10 a.m. on September 28, 1988.
 
 
 5
 To ensure the security of the operation, Drug Enforcement Administration (DEA) agents decided to move the location of the actual exchange to a nearby Quality Inn and to replace Lane with an undercover agent. On the morning of September 28, the agents placed a bag containing nearly one kilogram of 7.4% pure cocaine under a tree near the Quality Inn on Route 301. At approximately 9:05 a.m., Joseph Rodrigues, a long-time friend of Wells, arrived at Governor's Bridge in a rented car. He parked the car, removed some fishing equipment, and proceeded to the river where he began to fish.
 
 
 6
 At approximately 9:42 a.m., Wells arrived, spoke with Rodrigues, and placed a bag containing $15,000 in the trunk of the rental car. He then drove off in his own car, returned several times in the course of the next ten minutes, and eventually returned and parked near the rental car.
 
 
 7
 Shortly after 10:00 a.m., two undercover DEA agents, one of whom had previously met Wells, arrived at the bridge and by way of a note informed Wells that he could recover his package from under the tree near the Quality Inn. One of the agents then removed the bag containing the $15,000 from the trunk of the rental car and departed.
 
 
 8
 Wells showed Rodrigues the note, and the two of them proceeded to the Quality Inn. Wells drove past the Quality Inn, and Rodrigues stopped and retrieved the package containing the cocaine. He was then placed under arrest.
 
 
 9
 Rodrigues was indicted by a grand jury, and on December 16, 1988, he was convicted by a jury of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. Sec. 846. He was sentenced to a 58-month term of imprisonment. This appeal followed.
 
 II.
 
 10
 Rodrigues argues that the district court erred when, after receiving a note from the jury, it failed to instruct the jury that the offense of conspiracy to distribute cocaine requires an agreement to distribute to a third person rather than to a co-conspirator. The note was sent to the district judge by the jury during the jury deliberations and after the judge had properly instructed the jury on the elements of the offense of conspiracy to distribute cocaine. It read: "What does distribute mean? Giving it to Wells or giving it to street customers?" The district judge responded with a note stating: "The Defendant is charged with conspiracy to possess with intent to distribute, not distribution. The pertinent legal principles are set forth in the Court's charge." Rodrigues concedes that he did not object to the district judge's response, but nonetheless protests that the response constituted plain error.
 
 
 11
 We disagree. The appropriate response to an inquiry from the jury is a matter within the sound discretion of the district judge. See, e.g., United States v. Bailey, 830 F.2d 156, 157 (11th Cir.1987); United States v. White, 794 F.2d 367, 370 (8th Cir.1986). Moreover, because Rodrigues failed to object to the district judge's response, he must show that the instruction was plain error; that is, that " 'the instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.' " United States v. Frady, 456 U.S. 152, 169 (1982) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).
 
 
 12
 Not only has Rodrigues failed to show that the district judge's response was plain error, he has failed to show that it was error at all. The judge had already properly instructed the jury on the elements of the offense of conspiracy to distribute cocaine. The jury was required to convict Rodrigues if it found that he had engaged in the conspiracy knowing that its goal was to distribute cocaine, even if he was not planning on distributing the cocaine himself. See United States v. Goldman, 750 F.2d 1221, 1227 (4th Cir.1984). The district judge responded to the jury's inquiry by informing it that Rodrigues was not actually charged with distribution of cocaine, but rather with conspiracy to distribute. He then referred the jury back to the original instructions on conspiracy to distribute. Rodrigues does not contest the fact that the district judge drafted his response to the jury with the aid of counsel from both sides. Nor does he dispute that his counsel opposed the prosecution's request that the district judge define for the jury the meaning of the word "distribute." Under these circumstances, it is clear that there was no error in the response of the district judge.
 
 III.
 
 13
 Rodrigues also complains about the prosecution's statement in its closing argument indicating that Rodrigues had lied in denying that he had been placed on probation for having committed a crime. Rodrigues contends that the district court erred in allowing the prosecution to make this statement when in fact Rodrigues had never been placed on probation.
 
 
 14
 We find no error in the district court's failure to prevent this statement. Once again, Rodrigues failed to object to the prosecution's statement at the time it was made, instead raising the issue for the first time in his post-trial motion for a new trial. The plain error doctrine therefore applies to review of this issue as well.
 
 
 15
 Testifying in his own defense, Rodrigues admitted on direct examination that he had previously been arrested for carrying a concealed weapon, but protested that the charge had been thrown out of court. The prosecution sought to impeach Rodrigues by introducing a certified copy of his conviction on the charge. The district court docket sheet concerning the conviction indicated that Rodrigues had been convicted and placed on probation for the offense. The prosecution questioned Rodrigues concerning having been placed on probation, and Rodrigues denied that he was ever on probation. The prosecution referred to this inconsistency between the district court docket sheet and Rodrigues' testimony again during the rebuttal portion of its closing argument. Rodrigues did not object to the admission of the district court docket sheet or to the prosecution's statements during closing. Instead, he waited until after he had been convicted and then in his post-trial motion for a new trial brought forth evidence that on appeal of the concealed weapon offense he had pleaded nolo contendere and his sentence had been reduced to a fine with no probation. This newly discovered evidence in no way changed the fact that Rodrigues' testimony that the concealed weapon charge had been thrown out of court was contradicted by his conviction in the district court and his plea of nolo contendere on appeal. The minor inaccuracy in the statement of the prosecution concerning whether Rodrigues had been placed on probation, which was made without protest by defense counsel, is not the type of error which is so " 'obvious and substantial' that 'the fairness or integrity of the trial' " was affected. United States v. Wyatt, 762 F.2d 908, 912 (11th Cir.1985).
 
 IV.
 
 16
 For the foregoing reasons, the judgment of the district court is
 
 
 17
 AFFIRMED.
 
 
 
 *
 Judge Haynsworth participated in the consideration of this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C. Sec. 46(d)