996 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David MARSHALL, Defendant-Appellant.
 No. 92-5728.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1993.
Decided: June 29, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-91-394-A)
 George T. Volsky, Washington, D.C., for Appellant.
 Mark Joseph Hulkower, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Kenneth M. Robinson, Washington, D.C., for Appellant.
 Richard Cullen, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 A jury convicted David Marshall of conspiring to distribute five or more kilos of cocaine and possessing with intent to distribute 500 grams of cocaine. On appeal, he raises numerous issues, but his primary contention is that the district court by its jury charge constructively amended his indictment. We conclude that no constructive amendment occurred, and affirm.
 
 
 2
 * In October 1991 a federal grand jury returned a nine-count indictment against Marshall, Cora Cassidy, Donnie Dekle, and Twyman Dekle. Marshall was charged on two counts: Count One charged him with conspiring with his co-defendants and others between 1986 and June 1991 to distribute and possess with intent to distribute 50 or more grams of "crack" and 5 or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count Nine charged him with possessing with intent to distribute 500 grams of cocaine on April 15, 1991, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Marshall was tried with his three co-defendants. The government's evidence consisted primarily of the testimony of Julius Pinkston (the ringleader of the conspiracy), Richard Webb (Pinkston's chief distributor in Virginia), and Aldene Walker (Pinkston's chief courier). All three of these witnesses testified pursuant to plea agreements. Viewed in the light most favorable to the government, the trial evidence revealed the following, rather typical, drug transactions.
 
 
 3
 The conspiracy described in Count One of the indictment was led by Julius Pinkston, whose couriers were Twyman Dekle, Donnie Dekle, Aldene Walker, and Dennis Dekle. After the couriers brought the cocaine to Virginia from Miami and Atlanta, they delivered it to Marshall, Robert Pride, Harry Alvin, and Richard Webb (the "lieutenants"), who distributed it to the street dealers: Cora Cassidy, Lillian Rice, and Dorethea Rice.
 
 
 4
 Marshall met Pinkston in October 1989, when he accompanied Anthony McRae, Pinkston's "nephew," to Charlotte, North Carolina. At the meeting, Pinkston agreed to sell cocaine to McRae but not to Marshall, whom he had just met. Nevertheless, Marshall gave money to McRae, who combined it with his own funds and gave the money to Pinkston to pay for a quantity of cocaine.[1] Pinkston then gave the cocaine to McRae. Three weeks later, Marshall and McRae talked to Pinkston by telephone, agreeing to "see [him] in a day or so" for a second purchase. During this phone conversation Marshall told Pinkston that he wanted to "get a package," and McRae and Marshall told Pinkston they would come to see him regularly. In the winter of 1989 McRae and Marshall again saw Pinkston in Charlotte. Again Marshall and McRae combined funds, McRae paid Pinkston, and Pinkston gave McRae either a kilo or a half-kilo of cocaine. Shortly thereafter McRae was arrested, and Marshall travelled alone to North Carolina to purchase cocaine. Sometime in the following months, Pinkston sold Marshall a half-kilo for $14,000 and a kilo for $26,000.
 
 
 5
 In October 1990, approximately a year after he met Marshall, Pinkston moved to the Towers apartment complex in Alexandria, Virginia. While there, he "fronted" three kilos to Marshall for $30,000 apiece; that is, he gave the cocaine to Marshall, and Marshall paid Pinkston after he resold it. In November 1990 Pinkston moved to Bashford Lane in Alexandria. While there, he sold Marshall a quarter-kilo for $7,000 and a half-kilo for $14,000. Pinkston testified that he might have sold Marshall another half-kilo as well. Again Pinkston "fronted" the cocaine. In response to Marshall's request, Pinkston "rerocked" the half-kilo, changing it into a hard powder form preferred by customers, who feared that the powder might be diluted.
 
 
 6
 In April 1991 Twyman Dekle, a courier, delivered a half-kilo to Marshall through Webb. At Webb's wife's home, he gave Marshall the half-kilo and Marshall gave him $7,000 in cash, half the amount due. Webb arranged to have the money delivered to Pinkston. Webb later agreed to meet Marshall at a Wendy's restaurant in Alexandria, where Marshall gave him $4,000 earmarked for Pinkston. Webb arranged yet another meeting at a 7-11 store in Fairfax, where Marshall gave $2,300 cash to Webb, who sent it to Pinkston.
 
 
 7
 Sometime later, Pinkston instructed Walker (another courier) to contact Marshall by beeper. Walker delivered a quarter-kilo to Marshall at the Quality Inn in Alexandria, and Marshall gave him $2,500 as partial payment. In June 1991 Walker again met Marshall at the same hotel and collected $2,500 from him. Walker brought no cocaine with him to the second meeting, and Marshall told Walker he was disappointed. After Marshall was arrested, he denied knowing Pinkston. However, telephone records revealed over twenty-four calls made in a period of less than two months from Marshall's residence to Pinkston's beeper. After a three-day jury trial, Marshall and his codefendants were convicted on all counts. Only Marshall appeals.
 
 II
 
 8
 Marshall's principal contention is that the district court constructively amended the indictment by instructing the jury that Count Nine charged him with actual distribution, rather than possession with intent to distribute. Counts Two through Eight charged the three other defendants with actual distribution; Count Nine charged Marshall with possession with intent to distribute. The court charged the jury:
 
 
 9
 Now, counts two through nine charge these defendants with particular acts of possessing cocaine with the intent to distribute. Now, Title 21, United States Code, Section 841(a) again provides in pertinent part that it shall be unlawful for any person knowingly or intentionally to distribute or to possess with intent to distribute a controlled substance.
 
 
 10
 There are three essential elements of this offense the Government must prove. First, that the defendant possessed cocaine.
 
 
 11
 Second, that the defendant distributed cocaine. Or possessed it with the intent to distribute it, wouldn't that be? Excuse me just a moment.
 
 
 12
 They are charged with the actual distribution. That he possessed and that he in fact distributed cocaine. And that the defendant did so unlawfully and knowingly and intentionally.
 
 
 13
 Now, possession of cocaine and cocaine base are the objects of this conspiracy that is charged in count one and the substantive counts. The law recognize[s] two types of possessions, actual and constructive. A person who knowingly has direct physical control over an object is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over an object either directly or through another person or persons is then in constructive possession of that object.
 
 
 14
 The court went on to define "intent," "distribute," "specific intent," and "knowingly." When the jury retired to deliberate, it took with it a copy of the indictment. Shortly thereafter the jury sent the judge a note, asking him to restate the definitions of "conspiracy" and "intent to distribute." The court then redefined "conspiracy," "possession," and "distribute."
 
 
 15
 While the court's instructions on Count Nine reflect some confusion on its part, in our view the confusion did not rise to the level of a constructive amendment of the indictment. See Stirone v. United States, 361 U.S. 212 (1960). The Stirone Court, after reviewing a jury charge that varied from the indictment, counseled that an indictment "may not be broadened through amendment except by the grand jury itself." Id. at 215-16; see Wilson v. Lindler, F.2d, No. 92-6613, slip op. at 9 (4th Cir. June 11, 1993). When an indictment is actually or constructively amended, the error is reversible per se. Stirone, 361 U.S. at 219; Wilson, slip op. at 9.
 
 
 16
 Although the district court's instructions strayed from the charge in Count Nine, the hallmark of a constructive amendment is that it "deprive[s] a defendant of an opportunity to meet the prosecutor's case." United States v. Helmsley, 941 F.2d 71, 90 (2d Cir.), cert. denied, 112 S. Ct. 1162 (1991), cited in Wilson, slip op. at 9; see United States v. Massuet, 851 F.2d 111, 116 (4th Cir. 1988), cert. denied, 488 U.S. 1005 (1989); see also United States v. Hooker, 841 F.2d 1225, 1232 (4th Cir. 1988) (en banc) (purpose of Fifth Amendment right to be tried only on charges found by a grand jury is to give defendant notice). Here the elements of the crime on which the court instructed (distribution) subsume the elements of the crime charged in the indictment (possession with intent to distribute). The indictment put Marshall on notice of every element the government had to prove, and the erroneous instructions did not alter that notice.
 
 
 17
 Marshall did not object to the instructions at trial; therefore, we review them only for plain error. Fed. R. Crim. P. 52(b); United States v. Chavis, 880 F.2d 788, 794 (4th Cir. 1989). Here, even if the court's instructions confused the jury, the error necessarily rebounded in Marshall's favor because distribution is more difficult to prove than possession with intent to distribute. Moreover, the alleged statutory violation was unaffected, since § 841(a)(1) criminalizes both possession with intent to distribute and distribution, cf. Wilson, slip op. at 7, and the evidence against Marshall on the possession charge was overwhelming. See United States v. Baker, 693 F.2d 183, 187 (D.C. Cir. 1982). Finally, the jury had the indictment with it during deliberations, and its verdict was not "Guilty as charged" but the very specific: "As to count nine, guilty." Cf. Wilson, slip op. at 6. In short, the court's instructions did not amount to plain error.
 
 III
 
 18
 Marshall next argues that there is insufficient evidence to support his conspiracy conviction. He contends that the evidence established only that he bought cocaine from Pinkston. See United States v. Baker, 985 F.2d 1248, 1251 (4th Cir. 1993) (mere buyer/seller relationship is inadequate to establish participation in a conspiracy). We disagree.
 
 
 19
 "To sustain a conspiracy conviction, there need only be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.) (quotation omitted), cert. denied, 112 S. Ct. 3051 (1992). "Once it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." Id."A defendant need not have had knowledge of his coconspirators, or knowledge of the details of the conspiracy." Id. (citations omitted). Here, the prosecution's evidence showed much more than a mere buyer/seller relationship. It revealed Pinkston as the principal supplier and Marshall as one of several distributors. Marshall dealt with Pinkston in two states for twenty months. During that period he kept in touch with him and bought vast quantities of cocaine from him for large amounts of money. Pinkston's testimony that he "fronted" cocaine for Marshall and "rerocked" it on one occasion was evidence from which the jury could infer that Marshall distributed the cocaine to others and used the proceeds to pay Pinkston. Moreover, Marshall bought cocaine through two other members of the conspiracy: Webb and Walker. Finally, Marshall's distribution efforts were essential to Pinkston's success since he purchased the cocaine on credit subject to resale; Webb reinforced this by testifying that Pinkston had introduced Marshall as a "drug dealer who was going to make him a lot of money." See United States v. Simone, 931 F.2d 1186, 1193 (7th Cir.), cert. denied, 112 S. Ct. 584 (1991); United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir. 1984), cert. denied, 472 U.S. 1017 (1985); United States v. Apollo, 476 F.2d 156, 162 (5th Cir. 1973), overruled on other grounds by United States v. James, 590 F.2d 575 (5th Cir. 1979); United States v. Bruno, 105 F.2d 921, 922 (2d Cir.), judgment rev'd on other grounds, 308 U.S. 287 (1939).
 
 IV
 
 20
 Marshall next asserts that a variance existed between Count Nine of the indictment, which charged him with possessing a half-kilo of cocaine with intent to distribute, and the government's evidence, which showed that he was responsible for ten kilos of cocaine during the life of the conspiracy.[2] He maintains that he was prejudiced by the variance because he argued a personal-consumption defense during opening statements but was forced to abandon that theory after the government produced its evidence.
 
 
 21
 A variance occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment." Wilson v. Lindler, F.2d, No. 92-6613, slip op. at 9 (4th Cir. June 11, 1993). It requires reversal, however, only when it has prejudiced the defendant's rights. United States v. Moore, 512 F.2d 1255, 1256 (4th Cir. 1975); see Wilson, slip op. at 9. Count One charged Marshall with conspiring to distribute five or more kilos of cocaine. That count, combined with Count Nine, put Marshall on notice that the government would produce evidence linking him to at least 5.5 kilos of cocaine. If he was prejudiced, it was not by the variance but by his singular reliance on a personal-consumption defense. See United States v. Goldman, 750 F.2d 1221, 1226-27 (4th Cir. 1984) (variance could not have affected defense).[3]
 
 V
 
 22
 Marshall raises a host of other contentions that merit little discussion. First, he argues that the district court violated Federal Rule of Criminal Procedure 32(c)(3)(D) by failing to provide its reasons for sentencing him based on a cocaine quantity of 8.75 kilos. We disagree. In its "Position as to Sentencing," the government had outlined the evidence that supported a finding of 8.75 kilos. The court complied with Rule 32(c)(3)(D) by stating that it was adopting the government's evidence cited in its report, and by filing a Statement of Reasons for Imposing Sentence. In any event, a technical failure to comply with Rule 32(c)(3)(D) would not require resentencing. See United States v. Santana-Camacho, 931 F.2d 966, 969 (1st Cir. 1991).
 
 
 23
 He next urges that the district court erred in denying his motion for an evidentiary hearing before sentencing. See U.S.S.G. § 6A1.3(a) ("When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor."). Because the trial evidence on which the district court based its finding of 8.75 kilos was reliable, the court's decision to deny the motion for a hearing was not an abuse of its discretion. See United States v. Chagra, 735 F.2d 870, 873 (5th Cir. 1984).
 
 
 24
 A review of the record also demonstrates the lack of merit to Marshall's contention that, for sentencing purposes, the trial evidence failed to establish the quantities and dates when he purchased drugs. As to his due process argument concerning a sentence on drug amounts greater than those listed in the indictment, see United States v. Roberts, 881 F.2d 95, 104 (4th Cir. 1989).
 
 
 25
 Finally, because all of Marshall's arguments fail on the merits, it follows that his counsel's failure to object to the alleged errors at trial does not rise to the level of constitutionally ineffective assistance. See Strickland v. Washington, 466 U.S. 668, 687-89 (1984).
 
 
 26
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Pinkston testified that he was unsure of the quantity delivered on this occasion. He stated that he sold cocaine to Marshall and McRae twice, transferring one kilo on one occasion and one half-kilo on the other occasion, but he could not remember which quantity he delivered when
 
 
 [2]
 Marshall also argues that his conspiracy conviction must be reversed because a variance existed between the indictment, which alleged a single conspiracy, and the proof at trial, which established four separate conspiracies (generally tied to Pinkston's addresses in chronological order: Alexandria, Charlotte, Alexandria, and Atlanta). We believe the record supports a finding of one, lengthy conspiracy
 
 
 [3]
 Marshall also maintains that he was forced to give up his alibi defense for April 15, 1991, the day he allegedly committed the possession offense, since the government's proof established that he had bought drugs on many occasions. This argument is meritless. The conspiracy charge in the indictment put Marshall on notice that the government would try to prove his participation in overt acts dated March 25, 1991 and June 6, 1991, in addition to the April 15 purchase