**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 96-4471

DAMON JONES,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Peter J. Messitte, District Judge.
(CR-94-441-PJM)

Submitted: December 3, 1996

Decided: December 23, 1996

Before HALL, ERVIN, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

M. Brooke Murdock, FERGUSON, SCHETELICH, HEFFERNAN &
MURDOCK, P.A., Baltimore, Maryland, for Appellant. Lynne A.
Battaglia, United States Attorney, Maury S. Epner, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Damon D. Jones was convicted by a jury of one count each of armed bank robbery (18 U.S.C. § 2113(d) (1994)) and interference with commerce by robbery (18 U.S.C. § 1951 (1994)) and two counts of using a firearm in a crime of violence (18 U.S.C.§ 924(c) (1994)). The evidence showed that Appellant and two friends, Malik Nero and Calvin Barnes, robbed the Citizens Bank of Maryland in November 1992. Appellant, Barnes, Nero, and an out of town friend identified only as Tony also robbed an armored car courier in January 1994. After Barnes was arrested for an unrelated robbery, he implicated the other members of the group, agreed to act as an informant, and eventually testified against Appellant.

Appellant was also arrested on two separate occasions for unrelated offenses. After the first arrest, Barnes, wearing a concealed tape recorder, met with Appellant and discussed the bank and armored car robberies. Appellant made statements during this discussion which implicated him in the robberies. After the second arrest, Appellant was interviewed by FBI Special Agents Luciano and Coffey. The interview lasted approximately fifteen to thirty minutes. The agents testified that they told Appellant from the start that they were there only to discuss the bank and armored car robberies and not anything about the offense for which Appellant was currently in jail. Appellant was then orally advised of his <u>Miranda</u> rights.**1** Appellant stated that he understood his rights and was willing to speak to the agents. However, when Luciano presented Appellant with a written waiver form, Appellant refused to sign it, saying that he knew what he was doing, that he was guilty and would have to spend some time in jail for it, and that he just wanted a lawyer present to protect his interests. The agents immediately terminated the interview and began to pick up

_____

**1 <u>Miranda v. Arizona</u>**, 384 U.S. 436 (1966).

2

their things. Then, Appellant, on his own and without any prompting, stated that he had become a born again Christian, knew that what he had done was wrong, and repeated that he was guilty. The agents then left the room.

On appeal, Appellant argues that the district court erred in denying his motions to sever the bank robbery counts from the armored car robbery counts and to suppress the statements made to Luciano and Coffey. Appellant also argues that the trial judge erred in his response to a jury question concerning Barnes' plea agreement and in giving a supplemental instruction to the jury after the jury indicated it could not reach a verdict on the bank robbery counts. Finding no error, we affirm.

Joinder of offenses is the rule, not the exception, and a trial judge's decision to deny a motion to sever will only be overturned upon a "showing of clear prejudice or abuse of discretion." United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). In the present case, Appellant fails to make such a showing. We hold that the offenses were properly joined pursuant to Fed. R. Crim. P. 8(a) because they were of the same or similar character. The evidence supports the trial judge's determination that Barnes' testimony directly implicated Appellant in both robberies and that the same nucleus of actors planned and executed both crimes. Moreover, the Government's evidence concerning the tape recorded conversation between Appellant and Barnes and Appellant's statements to Luciano and Coffey arguably implicated Appellant in both robberies. We find that the present case is distinguishable from United States v. Foutz, 540 F.2d 733 (4th Cir. 1976), where this court held that joinder was improper because there was no direct evidence linking the defendant to both crimes, the evidence presented on one offense would not have been admissible in a trial on the other offense, and the only evidence presented to show a similarity was the fact that the same bank was robbed both times.

Once the offenses are properly joined under Rule 8(a), the trial judge has the discretion to sever the offenses if there is a showing of substantial prejudice pursuant to Fed. R. Crim. P. 14. United States v. Haney, 914 F.2d 602, 606 (4th Cir. 1990); United States v. Goldman, 750 F.2d 1221, 1224 (4th Cir. 1984); Foutz, 540 F.2d at 736. In the present case, Appellant fails to make such a showing.

While Appellant argues that he was confounded in his defenses, he fails to show "that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." Goldman, 750 F.2d at 1225; see also United States v. Martin, 18 F.3d 1515, 1519 (10th Cir.), cert. denied, #6D 6D6D# U.S. ___, 63 U.S.L.W. 3232, 63 U.S.L.W. 3262 (U.S. Oct. 3, 1994) (No. 94-41); United States v. Smith, 919 F.2d 67 (8th Cir. 1990). Simply stating that there may be a conflict is not sufficient. Id. Accordingly, we find that the trial judge did not abuse his discretion in denying Appellant's motion to sever.

Appellant argued at trial that his statements to Luciano and Coffey should be suppressed because they were obtained in violation of his Sixth Amendment right to counsel and Edwards v. Arizona, 451 U.S. 477 (1981). Specifically, Appellant maintains that the agents sat waiting in silence until Appellant felt compelled to make further comments after Appellant had refused to sign the written waiver form and invoked his right to counsel.

The record does not support Appellant's argument. Both agents testified that as soon as Appellant made his request for counsel, they terminated the interview in accordance with Edwards . While defense counsel attempted to argue that there were "pregnant pauses" in the interview, which "forced" Appellant to make further comments, this was explicitly denied by Luciano. The record supports the trial judge's determinations that the testimony of the agents was more credible and that Appellant's comments were spontaneous and uncoerced. Therefore, the judge did not abuse his discretion in denying the motion to suppress.

At some point during deliberations, the jury sent a note to the trial judge asking him to explain the plea agreement between Barnes and the Government.**2** After discussing the issue with counsel, the trial judge referred the jury to the Government exhibit containing the plea agreement itself.

_____

**2** The jury's question might have been based on testimony elicited from Barnes concerning his interpretation of the plea agreement and defense counsel's argument on this interpretation.

The decision to give, or not to give, a jury instruction and the content of that instruction are reviewed for an abuse of discretion. United States v. Burgos, 55 F.3d 933, 935 (4th Cir. 1995); United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992), cert. denied, 506 U.S. 1066 (1993). Moreover, the instruction must be viewed in the context of the trial as a whole. United States v. Park , 421 U.S. 658, 674-75 (1975); United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1406-07 (4th Cir. 1993).

In the present case, the trial judge did not abuse his discretion by instructing the jury to refer to the plea agreement. The jury wanted to know what the agreement was between Barnes and the Government. As the judge clearly pointed out in his discussions with counsel on this issue, the only enforceable agreement was that which was contained within the body of the plea agreement. The interpretations of Barnes and counsel were fair argument, but they did not represent the binding agreement.

After deliberating for approximately five hours, the jury sent a note to the trial judge stating that it had reached a decision as to the armored car robbery counts, but that it was undecided as to the bank robbery counts. After discussing the issue with counsel, the trial judge gave a proper modified Allen charge.[3] See United States v. Sawyers, 423 F.2d 1335 (4th Cir. 1970). At approximately 4:00 p.m., ninety minutes after receiving the first Allen charge, the jury sent a second note to the trial judge again stating that it was undecided as to the bank robbery counts. After discussing the issue again with counsel, the trial judge instructed the jury that, in his opinion, they had not deliberated long enough to decide that they were deadlocked, that he would excuse them for the day, and that they should return the next morning to continue deliberations. Sometime after noon the next day, the jury returned with guilty verdicts on the bank robbery and armored car robbery counts.

The same standard of review applies to this instruction as for the instruction concerning the plea agreement. Moreover, this court has upheld Allen-type instructions as long as they were "fair, neutral, and balanced." Burgos, 55 F.3d at 936; Carter v. Burch, 34 F.3d 257, 264

_____

3 Allen v. United States, 164 U.S. 492 (1896).

(4th Cir. 1994), <u>cert. denied</u>, ___ U.S. ___, 63 U.S.L.W. 3613 (U.S. Feb. 21, 1995) (No. 94-1058). In addition, a trial judge "has considerable discretion and is in the best position to gauge whether a jury is deadlocked or able to proceed further with its deliberations." <u>United States v. Seeright</u>, 978 F.2d 842, 850 (4th Cir. 1992).

Again, viewing the instruction in the context of the trial as a whole, the trial judge did not abuse his discretion in giving the supplemental instruction. Appellant's trial lasted five days and involved several counts. The jury had only deliberated for five hours when it first notified the judge that it could not reach a decision. After giving the first <u>Allen</u> charge, the judge told counsel that he did not expect the jury to reach a decision prior to 4:30 p.m., the time he had previously told the jury they could go home for the day. Taken in context with the first <u>Allen</u> charge, there is nothing in the supplemental instruction that even subtly suggests that "jurors surrender their conscientious convictions." <u>Burgos</u>, 55 F.3d at 939; <u>see also Carter</u>, 34 F.3d at 265. The trial judge was not trying to coerce the jury into reaching a particular verdict. Rather, the language of the instruction, coupled with the judge's discussions with counsel, clearly suggests that the judge's primary concern was that the jurors might simply be giving up too soon. This court has held that "[u]nder such circumstances as these, a quick acquiescence to an indication of difficulty in arriving at a verdict would have, we think, been contrary to the district judge's duty to exert every reasonable effort to keep the criminal dockets current." <u>Sawyers</u>, 423 F.2d at 1340.

We therefore affirm the findings and sentence of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6